IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FRANCISCO JAVIER SOLORIO-MONDRAGON,**

      Petitioner,

  vs.                                    Civ. No. 12-1055 RB/ACT
                                          Cr. No. 10-620 RB

**UNITED STATES OF AMERICA,**

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255 {"Motion"), filed October 12, 2012. [Doc. 1] On January 31, 2013, Respondent filed its Response ("Response"). [Doc. 8.] On April 22, 2013, Petitioner filed a Reply ("Reply"). [Doc. 9.] Having considered the parties' submissions and the relevant law, the Court recommends that Petitioner's Motion be DENIED and this action be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

1.     Petitioner was born in Apatzingan, Michoacan, Mexico, and came to the United States for employment in 2007. [Doc. 8-6 at 12.] He reported initially settling in Modesto, California, but then relocating to Farmington, New Mexico, in 2008. [Id.] In December 2009, he returned to California and was attempting to return to Farmington, New Mexico, when he was taken into custody on January 29, 2010. [Id.]

---

[1] On Order of Reference [Doc. No. 2] was entered on October 12, 2012, referring this case to Magistrate Judge Alan C. Torgerson to conduct, hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

      2.      On January 29, 2009, Petitioner and Ms. Tia Silvey were stopped at a joint Law Enforcement Agency roadblock on westbound Interstate 40 near Gallup, New Mexico. [Doc. 8-6 at 5, ¶ 7.] Ms. Silvey was driving the car. [Id.] Because Ms. Silvey did not have a driver's license, she was asked to proceed to a secondary inspection lane. [Id.] Officer Troy Velasquez asked Ms. Silvey to exit the vehicle because she had "a glossy look in both of her eyes" and there was an "overwhelming odor of air freshener and a fruity smell" emitting from the vehicle. [Id. at ¶ 8.] Petitioner also exited the vehicle and was questioned by a Spanish-speaking officer after he indicated that he did not speak English. [Doc. 8 at 2; Doc. 8-6 at ¶ 8.] In the course of questioning Ms. Silvey about the status of her driver's license, Ms. Silvey ultimately communicated to Officer Velasquez that there was "personal use" methamphetamine in the vehicle. [Id. at 6, ¶ 12.] Following a search of the vehicle, officers removed two separate plastic bags containing 519 grams of methamphetamine. [Doc. 8 at 3; 8-6 at 6, ¶ 13.] DEA agents were notified of the seizure and all evidence was turned over to DEA agents. [Id. at ¶ 14.] Petitioner was taken into custody by the United States Border Patrol, and Ms. Silvey was taken into custody by the DEA.

      3.      On January 30, 2009, Petitioner was interviewed by agents at the DEA Albuquerque District Office. [Doc. 8-6 at 6, ¶ 15.] He communicated to officers that he and Ms. Silvey were traveling from California to Farmington, New Mexico, for the purpose of selling methamphetamine. [Id. at ¶ 16.] Petitioner stated he had purchased 12-14 ounces of methamphetamine from an individual in California named Pedro, and paid for it with money he had made selling methamphetamine in Farmington, along with borrowing money from friends and "selling jewelry and other items." [Id. at 6-7, ¶¶ 16-17.] Petitioner claimed that Pedro helped him connect with Ms. Silvey. [Id. at 7, ¶ 17.] Ms. Silvey agreed to travel with Petitioner

from California to New Mexico and to drive his vehicle for him. [Doc. 8-6 at 7, ¶ 18.] Petitioner's vehicle had a manual transmission, which Petitioner stated he was unable to operate unless he was on the open road. [Doc. 8-6 at 7, ¶ 18.] Petitioner further stated that he and Ms. Silvey were going to live in Farmington, and that Ms. Silvey would be "his chauffeur in Farmington as he drove around selling the methamphetamine." [Id..] Finally, Petitioner reported to DEA agents that the methamphetamine found in the vehicle was the same methamphetamine he purchased from Pedro, and that he hid the drugs in the console area of the vehicle while Ms. Silvey was asleep. [Id. at ¶ 19.]

   4. On February 26, 2009, Petitioner and Ms. Silvey were indicted for possession with an intent to distribute 50 grams or more of a mixture and substance that contained a detectable amount of methamphetamine, as well as conspiracy to do the same, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). [Doc. 8 at 4; USDC NM Cr. No. 09-490, Doc.13.] The charges constituted a "B-level" offense and carried a minimum term of imprisonment of 5 years to a maximum term of 40 years. [Id.] Assistant Federal Public Defender John F. Robbenhaar was appointed to represent the Petitioner. [Id.] On March 5, 2009, Petitioner pled not guilty to all counts. [Cr. No. 09-490, Doc. 17.] Thereafter, Petitioner's counsel and the United States negotiated and reached an agreement as to a proposed plea offer that included a base offense level of 34, a two-point reduction for acceptance of responsibility, an additional one-point reduction for timely notification, a revised statement of facts, and a promise from the United States to recommend a sentence at the low end of the applicable guideline range. [Doc. 8 at 4.]

   5. On September 29, 2009, the United States informed Petitioner's counsel that the Speedy Trial Act had expired for both Petitioner and Ms. Silvey. [Doc. 8-4.] Petitioner was given the option of entering into a plea agreement and waiving his right to challenge any defects

with respect to the Speedy Trial Act, or having the Indictment dismissed without prejudice and being re-indicted. [Id.]

6.  On October 30, 2009, Attorney Robbenhaar filed a motion notifying the Court that Petitioner was requesting new counsel. [Cr. No. 09-490, Doc. 40.] On November 4, 2009, the Court entered an order allowing Attorney Robbenhaar to withdraw, and Attorney James Baiamonte was appointed to represent Petitioner.  [Cr. No. 09-490, Docs. 43, 44.]

7.  On December 7, 2009, the Court scheduled a change of plea hearing. [Cr. No. 09-490, Doc. 48.] On December 17, 2009, Petitioner informed the court "he does not wish to plea," and the hearing was vacated.  [Cr. No. 09-490, December 17, 2009.]

8.  On March 2, 2010, Ms. Silvey filed a motion to have her charges dismissed based on violations of the Speedy Trial Act.  [Cr. No. 09-490, Doc. 85.]  Because the same law and reasoning applied to Petitioner, on March 3, 2010, District Judge John E. Conway entered a Memorandum Opinion and Order dismissing without prejudice the Indictment against Petitioner for violation of the Speedy Trial Act. [Cr. No. 09-490, Doc. 87.]

9.  On March 10, 2010, Petitioner and Ms. Silvey were re-indicted. [USDC NM Cr. No. 10-620, Doc. 13.] The second indictment alleged possession with an intent to distribute 50 grams or more of methamphetamine, as well as conspiracy to do the same, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).[2]  [Id.] The charges constituted an "A-level" offense and carried a minimum term of imprisonment of 10 years to a maximum term of life imprisonment. [Doc. 8 at 6.]

---

[2] By the time of the second indictment, the United States had received the results from the DEA drug lab in Dallas Texas, indicating the substance seized from Petitioner's vehicle was actual methamphetamine and not a mixture.

10.     On August 17, 2010, the day his trial was to begin, Petitioner pled guilty to (1) conspiracy to possess with an intent to distribute 50 grams and more of methamphetamine in violation of  21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and (b)(1)(A), and U.S.S.G. § 2D1.1; and (2) possession with intent to distribute 50 grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), 18 U.S.C. § 2, and U.S.S.G. § 2D1.1. [Doc. 8-6 at 9, ¶ 29; Cr. No. 10-620, Doc. 61.][3]

11.     On August 25, 2010, Petitioner was interviewed by DEA agents pursuant to a "5K deal" and his anticipated cooperation against Ms. Silvey. [Doc. 8 at 6.]  He communicated to officers during this interview that he had lied to the DEA agents after his arrest because he got nervous. [Doc. 8-5.] Petitioner stated that the individual he met in California was named Greñas (not Pedro), and that Greñas had asked him to take methamphetamine to Albuquerque, New Mexico. [Id.] Petitioner further stated that Greñas had introduced Petitioner to Ms. Silvey and told him that Ms. Silvey would drive Petitioner to Farmington, New Mexico. [Id.]   Finally, he stated that he did not purchase the methamphetamine that was in his possession, but was being paid by Greñas to transport it to Farmington, New Mexico. [Id.] Petitioner admitted to selling methamphetamine in Farmington, New Mexico, prior to traveling to Modesto, California. [Id.]

12.     On November 19, 2010, Petitioner's counsel submitted the following written statement of acceptance of responsibility:

> I pled guilty to illegally possessing 50 grams or more of a mixture of methamphetamine because I was in fact guilty.  I had sold a quantity of

---

[3] Ms. Silvey proceeded to trial, which resulted in a mistrial. [Doc. 8 at 6.]  She was retried and ultimately acquitted. [Id.]

>methamphetamine in Farmington, New Mexico earlier.  I went to Modesto, California to procure more methamphetamine and was on my way back to Farmington, New Mexico when the car I was traveling in was stopped at a DWI checkpoint.
>
>It was my intention to sell the methamphetamine.  I could not drive a manual transmission vehicle, so Tia Silvey was driving the car.  I was in conspiracy with Tia Silvey to distribute the narcotics.

[Doc. 8-6 at 9, ¶ 27.]

  13. On February 9, 2011, District Judge John E. Conway entered Judgment against the Petitioner and sentenced him to a term of imprisonment of 188 months. [Doc. 8 at 7.]  The Presentence Investigation Report determined that Petitioner was responsible for 323 grams of actual methamphetamine, resulting in a base offense level of 34. [Id. at 10, ¶ 29.]  Probation recommended a two-point enhancement based on Petitioner's leader/organizer role in the trafficking conspiracy, but it was offset by a two-point adjustment for acceptance of responsibility. [Id. at ¶¶ 32, 35.]  Probation's calculations thus yielded a combined offense level of 34, with a Criminal History Category of 1, resulting in a final guideline sentencing range of 151 to 188 months. [Id. at 14, ¶ 55.]

  14. On February 17, 2011, Petitioner's counsel  filed a Notice of Appeal to the Tenth Circuit Court of Appeals from the Judgment entered.  Defendant's counsel, James Baiamonte, subsequently filed an *Anders* brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), wherein he explained why he believed there to be no reasonable grounds for appeal and requested leave to withdraw.  On October 28, 2011, the Tenth Circuit Court of Appeals entered its Order and Judgment and found that Petitioner could raise no meritorious issue on appeal, granted counsel's motion to withdraw, and dismissed Petitioner's appeal.

15.     On October 12, 2012, Petitioner filed his Motion to Vacate, Set Aside or Correct Sentence, alleging ineffective assistance of counsel. Petitioner states that (1) his first counsel (John Robbenhaar) provided him with erroneous advice that led him to reject a 60-month plea offer, (2) his second counsel (James Baiamonte) "scar[ed] petitioner into entering into a guilty plea," and (3) his counsel failed to argue for application of the "safety valve." [Doc. 1 at 2-3, 7.]

## ANALYSIS

### Ineffective Assistance of Counsel

16.     The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) governs the inquiry of whether an attorney's performance was ineffective. In order to establish a claim of ineffective assistance of counsel, Petitioner must show both that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that he was so prejudiced because of counsel's errors that the outcome of the proceedings was rendered unreliable. *Id.* Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* In applying the test of whether an attorney's performance was deficient and fell below an objective standard of reasonableness, the Tenth Circuit advises that "we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable profession judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002)(internal citation omitted), *cert. denied*, 537 U.S. 1093 (2002). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible

defense strategy. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997), *cert. denied,* 522 U.S. 844 (1997).

17. The question under *Strickland* is not whether counsel could have done more or even better, but whether counsel's actions or decisions were "[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland*, 466 U.S. at 691. In other words, even if Petitioner had not received "perfect" or the "best possible" legal representation at every step of the proceeding, he is not entitled to "perfect" or the "best possible" representation. *Washington v. Watkins*, 655 F.2d 1346, 1357 (5th Cir. 1981), *cert. denied,* 456 U.S. 949 (1982)(not "entitled to perfect or error free representation"); *United States v. Rhoads*, 617 F.2d 1313, 1319 (8th Cir. 1980)(not entitled to representation that results in an acquittal or "best possible" representation); *see also Martinez v. U.S.*, 2008 WL 2329171, *5 (D. Utah June 3, 2008)(unpublished opinion). The Court does not indulge in the "distorting effects of hindsight." *Strickland,* 466 U.S. at 689.

18. A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (citing *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 1407-1408 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010); and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct.366 (1985)). "In *Hill*, the Court held 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Lafler*, 132 S.Ct. at 1384 (quoting *Hill v. Lockhart*, 474 U.S. at 58). The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler*, 132 S.Ct. at 1384 (quoting Hill, 474 U.S. at 53 (quoting *Strickland*, 466 U.S. at 688)). To establish *Strickland* prejudice in the context of pleas, a defendant must show the outcome of the plea process would have been

different with competent advice. *Id.*; *see Frye*, 132 S.Ct. at 1410 (noting that *Strickland's* inquiry, as applied to advice with respect to plea bargains, turns on whether the result of the proceeding would have been different). To establish the improvident acceptance of a guilty plea, the Court requires the petitioner show that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Lafler*, 132 S.Ct. at 1384-85. To establish that ineffective advice led not to an offer's acceptance but to its rejection, a petitioner must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler*, 132 S.Ct. at 1385.

### a. First Counsel - Attorney John Robbenhaar

19. Petitioner alleges that his first counsel, Attorney John Robbenhaar, was ineffective because he "made an illiterate man reject a favorable offer by telling him to basically get on the witness stand and commit perjury." [Doc. 1 at 7.] Petitioner admits that Attorney Robbenhaar told him it would be "better to accept the 60 month offer instead of risking trial." [Id. at 3.] Petitioner further admits that Attorney Robbenhaar told him that he could testify at trial on his own behalf. [Id.] Petitioner explains, however, that his counsel advised him that if he were to make statements at trial that were different from what he told the DEA agents, his earlier statements would be weighed against his trial testimony. [Doc. 1 at 3.] Petitioner states that this advice "led petitioner to forgo the 60 months plea offer and risk the trial because he intended to tell the jury that the statements he made were not true." [Id.]

20. There are two preliminary problems in Petitioner's arguments. First, Attorney Robbenhaar withdrew at Petitioner's request *before* Petitioner's change of plea hearing was even set and subsequently vacated. Thus, while the record indicates that Attorney Robbenhaar negotiated a plea agreement with the United States, it is unclear what role, if any, he played in Petitioner's decision to initially want to accept the plea agreement and then to not want to accept the plea agreement.[4] Second, Petitioner's repeated reference to a "60 month offer" is misleading because the plea offer was for Petitioner to plead guilty to the offenses as charged in the first indictment – charges which carried a *minimum* term of 60 months imprisonment. [Doc. 8 at 15.] The Petitioner was never offered a plea agreement of 60 months imprisonment. [Id.] Setting those preliminary problems aside, Petitioner admits in his Motion that his counsel told him it would be "better to accept the 60 month offer instead of risking trial." [Doc. 1 at 7.] Petitioner further admits that he was offered "the 60 months on numerous occasions." [Id.] The fact that Petitioner's counsel advised him that his statements to the DEA would be weighed against his testimony at trial is not only objectively reasonable, but precisely what a competent and effective attorney should have done.

21. It is undisputed that a defendant has a constitutional right to participate in the making of certain decisions which are fundamental to his defense. *Jones v. Barnes*, 462 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983). The decision to plead guilty or not is one that must be made by the defendant, and is not one in which an attorney may speak for his client without consultation. *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 1711-13 (1969);

---

[4] The record indicates that Attorney Robbenhaar was finalizing the plea agreement at or near the time Petitioner requested new counsel (October 30, 2009). [Doc. 8-3.] The change of plea hearing, at which time Petitioner would presumably have accepted the plea agreement, was set by the Court on December 7, 2009, and scheduled for December 17, 2009. Attorney Baiamonte was representing Petitioner at this time.

*Brookhart v. Janis*, 384 U.S. 1, 7, 86 S.Ct. 1245, 1248 (1966). Here, Petitioner insisted he wanted to tell the jury that the statements he made to the DEA agents were not true. Therefore, the decision of which Petitioner now complains is one he made *against* the advice of his counsel.

22. Petitioner has failed to show that Attorney Robbenhaar's representation fell below an objective standard of reasonableness. Furthermore, Petitioner's after the fact declaration concerning his desire to accept "the 60 month plea," without more, is insufficient to establish that but for his counsel's advice there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe.

### b.  Second Counsel - Attorney James Baiamonte

23. Petitioner next alleges that his second counsel, Attorney James Baiamonte, was ineffective because he "scar[ed] petitioner into entering into a guilty plea."[5] [Doc. 1 at 7.] Petitioner explains that Attorney Baiamonte told him that if his intention was to testify and "deny the statements made after arrest, he could be charged with perjury." [Id. at 6.] Petitioner claims that this advice "led him to forego his right to a jury trial, and plea[d] guilty to a less favorable plea than the one previously contemplated." [Id. at 3.] Petitioner also argues that leading up to his trial Attorney Baiamonte told him there was no evidence to convict him at trial,

---

[5] Petitioner entered a guilty plea as to the second indictment against him. See USDC NM Cr. No. 10-620. The first indictment against Petitioner was dismissed on March 3, 2010. See USDC NM Cr. 09-490. With the dismissal of the first indictment, the plea negotiations associated with those charges expired. [Doc. 8 at 14.]

that Ms. Silvey was not cooperating with the Government against him, and that Ms. Silvey had won her case which made the Government's case "very very weak." [Doc. 1 at 6.] Petitioner claims that Attorney Baiamonte told him that the only evidence the prosecution possessed was the statements he had made to the DEA agents after his arrest, and that those statements could be suppressed because Petitioner "could not possibly understand the Miranda warnings due to his language barrier with the English language." [Doc. 1 at 6.]

24.     The Court does not find Petitioner's argument either believable or persuasive. Petitioner's argument is not believable because Petitioner's counsel could not have advised Petitioner regarding his chances at trial based on what had transpired with Ms. Silvey's trial because her trial had not yet taken place. The day Petitioner entered his plea was the day Ms. Silvey's trial began. Furthermore, while Petitioner suggests that his counsel advised him that the statements he made to the DEA agents could be suppressed, the docket fails to reflect that counsel made any motions to suppress his statements in the months leading up to trial. *See* USDC Cr. No. 10-620.[6] Finally, the record reflects that Petitioner advised the checkpoint authorities that he did not speak English and as a result was questioned by a Spanish-speaking officer. The record further reflects that when Petitioner was interviewed by the DEA agents on January 30, 2009, he was provided his Miranda rights in Spanish as follows:

> TFO Munoz read to Solorio-Mondragon his Miranda Rights *in Spanish* in the presence of TFO Sanchez. TFO Sanchez further observed TFO Munoz to sit next to Solorio-Mondragon so that Solorio-Mondragon could read his Miranda Rights *in Spanish* at the same time TFO Munoz was reading them out loud to him. Solorio-Mondragon advised TFO Munoz and TFO Sanchez that he understood his rights.

---

[6] The only Motion to Suppress was filed on behalf on Ms. Silvey. [Cr. No. 10-620, Doc. 21.]

[Doc. 8-2 at 1, ¶ 2.] (Emphasis added.) Thus, Petitioner's assertion that his counsel would suggest a trial strategy based on Petitioner's inability to understand his Miranda rights because of his language barrier is not plausible.

25. Petitioner's argument is not persuasive because Petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. Here, Petitioner's counsel advised him that were he to testify at trial and deny the statements he made to the DEA agents, he risked being charged with perjury. The fact that Petitioner's counsel advised him of this possibility is precisely what a competent and effective attorney should have done. That aside, Petitioner still had the choice of going to trial and not testifying, or going to trial and testifying against his counsel's advice. Petitioner chose to plead guilty.

26. Furthermore, while Petitioner argues that he was "scared" into pleading guilty, there is no evidence to support his argument. To the contrary, the record from the change of plea hearing states the following:

> COURT: Have you discussed the charges and your case in general with your lawyer, Mr. Baiamonte?
>
> DEFENDANT: Yes.
>
> COURT: Are you satisfied with the legal representation and legal advice given to you by Mr. Baiamonte?
>
> DEFENDANT: Yes.
>
> COURT: Now, your lawyer, at the beginning of this hearing, indicated that you wish to waive your rights to jury trial and enter a plea of guilty to the two counts in the indictment; is that correct, sir?
>
> DEFENDANT: Yes.

13

| | |
|---|---|
| COURT: | Now, has anyone attempted in any way to force you to plead guilty? |
| DEFENDANT: | No. |
| COURT: | *Has anyone threatened you, harassed you, or intimidated you in an effort to get you to plead guilty?* |
| DEFENDANT: | *No.* |
| COURT: | Has anyone promised you anything in exchange for your plea of guilty? |
| DEFENDANT: | No |
| COURT: | Are you pleading guilty to the two counts of the indictment of your own free will because you are guilty? |
| DEFENDANT: | Yes. |

[Cr. No. 10-620, Doc. 11, p. 5, ll. 3-25.] (Emphasis added.)

27.     As previously stated, the decision to plead guilty or not is one that must be made by the defendant. Here, Petitioner decided to enter a guilty plea, rather than risk potential perjury charges were he to deny at trial the statements he made to the DEA agents. Petitioner has failed to show that Attorney Baiamonte's representation fell below an objective standard of reasonableness. Petitioner has also failed to show any prejudice because "[h]ad Defendant elected to proceed to trial, *even without testifying*, he would have faced a sentencing range of 188 to 235 months incarceration" because he would have lost his two point reduction for not accepting responsibility. [Doc. 8 at 13.] (Emphasis added.) In addition, if Petitioner had been found guilty of perjury, he would have subject to an additional two-point enhancement. [Id.] Thus, Petitioner's after the fact declaration concerning his desire to go to trial, without more, is insufficient to establish that but for his counsel's advice regarding the potential consequences of changing his testimony at trial he would not have pleaded guilty and insisted on going to trial.

### c. 18 U.S.C. § 3553(f) - Safety Valve Application

28. Section 3553(f) provides that a defendant can be given a guideline sentence, instead of the mandatory minimum prescribed by statute, if the court finds at sentencing that:

   (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

   (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

   (3) the offense did not result in death or serious bodily injury to any person;

   (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

   (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. 3553(f).

30. Section 3553(f) was enacted as a "safety valve" to permit courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences. *See United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995). A defendant seeking to avail himself of this safety valve is required to meet the objective criteria of § 3553(f), and also required to truthfully disclose all that he knows concerning both his own involvement in the crime and that of any co-conspirators, regardless of whether this information is useful to the Government or not. *Acosta-Olivas*, 71 F.3d at 379.

31.     Here, Petitioner claims Attorney Baiamonte was ineffective because he failed to argue for application of the safety valve at his sentencing hearing, and that he should have done so because Petitioner met all the criteria for it's application. The Court disagrees. First, Petitioner did not meet the objective criteria as described in § 3553(f) because he was deemed an organizer/leader in the Presentence Investigation Report contrary to § 3553(f)(4), supra. [Doc. 8-6 at 10, ¶ 32.] Second, the Court did not believe Petitioner had truthfully disclosed all that he knew concerning his involvement in the crime. The record from the sentencing hearing states as follows:

> THE COURT:
>
> Regarding defendant's request for a statutory minimum sentence, the facts and information before me simply does not support imposition of a ten-year sentence. Instead, I find merit in the government's position that a sentence at the high end of the properly calculated guideline range is appropriate in this case.
>
> The drug-related conduct for which the defendant was not convicted is appropriate and necessary for my consideration as relevant conduct for purposes of sentencing. Specifically, defendant admitted to distributing approximately 250 grams of methamphetamine to secure the funds necessary to purchase 323 grams he was arrested for in this case.
>
> Further, this defendant has declined to take any steps to mitigate his sentence and, instead, chose to tell authorities an implausible and not credible story in which he attempted to mitigate his own role and present himself as a mere courier.

[Cr. No. 10-620, Doc. 118, p. 4, ll. 1-19.]

32.     Petitioner has failed to show that Attorney Baiamonte's representation fell below an objective standard of reasonableness. Furthermore, Petitioner has failed to show that the outcome of the proceedings were unreliable.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, this Court recommends that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255 [Doc. 1] be DENIED, and that this action be dismissed with prejudice.

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(c), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen (14) days period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge**